IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BENJAMIN A. VARGA,)
)
        Plaintiff,)
)
  vs.)   Civil Action No. 2:14-25
)
CAROLYN COLVIN, Acting Commissioner)
of Social Security,)
)
        Defendant.)
)

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 7 and 9). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 8 and 10). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion (Docket No. 9) is granted and Plaintiff's Motion (Docket No. 7) is denied.

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff applied for SSI on or about December 9, 2010. (R. 138-46). In his application, he alleged that he had been disabled since October 1, 2008. Id. Administrative Law Judge ("ALJ") Charles Pankow held a hearing on July 2, 2012, at which Plaintiff was represented by counsel. (R. 26-59). Plaintiff appeared at the

hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 55-58). In a decision dated August 28, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 12-21). On November 8, 2013, the Appeals Council denied Plaintiff's request for review. (R. 1-6). Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 7 and 9). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those

findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745

F.2d 210, 221 (3d Cir. 1984).

B.  **WHETHER THE ALJ ERRED BY FAILING TO GIVE THE OPINION OF PLAINTIFF'S TREATING PSYCHOLOGIST CONTROLLING WEIGHT**

The ALJ found that Plaintiff had severe impairments, including bipolar disorder, anxiety disorder, obsessive-compulsive disorder, depression, a social anxiety disorder, not otherwise specified, a personality disorder, IgA neuropathy, knee pain, and chronic kidney disease stage I. (R. 14). He further found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that he was limited to occasionally performing postural maneuvers such as balancing, kneeling, climbing, crouching, stooping, and crawling. He further required a low stress environment defined as few changes in work settings with no fast-paced production or quota-production standards. The RFC finding additionally limited Plaintiff to occasional contact with the public, co-workers, and supervisors. Also, Plaintiff could not work at a hospital, medical clinic, physician's office or any facility that provides medical care for humans and could not work at any facility in the preparation or handling of food stuffs for human consumption. (R. 17-19). The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act. (R. 20-21).

Plaintiff argues the ALJ's findings are deficient because he failed to give the medical opinions of his treating psychologist, Russell Walsh, Ph.D., controlling weight. Pl.'s Br. [ECF No. 18] at 11-14. After careful review of the record, applicable regulations, and relevant case law, I disagree.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a

non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 416.927(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. § 416.927(d)(1), (3); Dixon v. Comm'r of Social Security, 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008). In the present case, I find that the ALJ met this standard.

Plaintiff argues that the ALJ erred in failing to assign controlling weight to Dr. Walsh's treating medical source statement opining that Plaintiff's mood disturbance, emotional lability, episodic paranoia, recurrent substance abuse, and hostility/irritability have significantly impaired his ability to obtain and maintain employment. Pl.'s Br. [ECF No. 8] at 11-14 (citing R. 567-571, 648, Exs. 14F, 19F). I disagree. The ALJ explained that he gave limited weight to Dr. Walsh's opinion because it was inconsistent with the medical evidence of record and because Dr. Walsh treated Plaintiff only sporadically over the time period at issue. (R. 19). These are appropriate reasons for giving a treating physician's opinion less than controlling weight. 20 C.F.R. § 416.927.

Upon review of the record, I find that substantial evidence supports the ALJ's opinion. Dr.

Walsh, who supplied a one-page treatment summary rather than his confidential treatment notes, admits that although Plaintiff initiated treatment with him in January 2000, such treatment continued intermittently, with long lapses between September 2005 and July 2007 and between September 2009 and June 2011. (R. 19, 648). Plaintiff returned to regular sessions briefly in the summer of 2011 and then again in January, 2012. Id. Since January, 2012, Plaintiff saw Dr. Walsh "more or less" monthly through the time of the hearing on July 2, 2012. Thus, Dr. Walsh's treatment summary does not paint the same longitudinal picture as a physician who has <u>continually</u> observed a patient's condition over a prolonged period of time. The ALJ also identified contradictory medical evidence of record, including the opinion of consultative examiner Dr. Vincent Dimalta who examined Plaintiff in April 2011 and concluded that Plaintiff's mental impairments did not affect his ability to understand, remember, and carry out instructions or his ability to interact appropriately with co-workers; and only slightly limited his ability to respond appropriately to changes in a routine work setting and interact appropriately with supervisors and the public. (R. 16-17, citing Ex. 13F).[1] Dr. Dimalta also noted only slight to moderate limitations in Plaintiff's ability to respond appropriately to changes in a routine work setting. (R. 559). Although Dr. Dimalta acknowledged upon examination that Plaintiff suffered from an adjustment disorder with anxiety that affected his ability to function, he noted, <u>inter alia</u>, that Plaintiff had no preoccupations, could perform serial 7s, had an affect within normal limits, denied hallucinations, and had a fair to good prognosis. (R. 17, citing Ex. 13F). Other record evidence on which the ALJ relied includes Plaintiff's self-reported activities of daily living, such as caring for pets, caring for personal needs with minimal or no difficulty, preparing meals, cleaning, doing laundry and

---

[1] Plaintiff contends the ALJ erred in relying on Dr. Dimalta's opinion because it is only a "snap shot" of Plaintiff's ability on that given day. I disagree. As noted above, the ALJ properly cited additional evidence that cast doubt on Dr. Walsh's opinion, including Plaintiff's activities of daily living, hearing testimony, and intermittent treatment history with Dr. Walsh. Taken together, substantial evidence supports the ALJ's decision to afford Dr. Walsh's opinion little weight.

7

household chores, reading, playing guitar and piano, shopping, handling a savings account, and using a checkbook. R. 18-19 (citing Ex. 3E and Testimony).

To the extent Plaintiff focuses on his Global Assessment of Functioning ("GAF") scores as evidence that his mental impairments were disabling, that argument is without merit. Pl.'s Br. [ECF No. 8] at 13-14. In particular, Plaintiff highlights that Dr. Saghir Ahmad assigned Plaintiff GAF scores ranging from 35 at admission to 40 at discharge during a four-day psychiatric hospitalization in June, 2011. (R. 606-611). In addition, Dr. Tanya Kirby gave Plaintiff a GAF score of 20-25 upon admission to Westmoreland Hospital in June 2009. (R. 19, 378). These GAF scores, however, are not dispositive. The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003).[2] As courts have explained, however, a particular GAF score does not necessarily correlate to one's ability to work. See, e.g., id. at 75. Here, there is no record evidence that Dr. Ahmad or Dr. Kirby assigned Plaintiff the asserted GAF scores because they perceived Plaintiff as impaired in his ability to work or otherwise placed any restrictions on his ability to work due to his mental health. Moreover, the ALJ did not ignore these GAF scores in his analysis. Rather, he acknowledged the scores and explained his decision to assign them minimal weight. In addition to the above, the ALJ noted that the GAF is a subjective scale used to evaluate social, occupational or school functioning only at that particular time. (R. 19). He also noted that the

---

[2] A GAF of 21-30 indicates behavior that "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR"). A GAF of 31-40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." Id. A GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning." Id. A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Id. A GAF from 61-70 reflects "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." Id.

GAF findings were inconsistent with plaintiff's course of medical treatment and reported activities of daily living. The ALJ additionally emphasized that both sets of GAF scores were assessed upon hospital admissions and that Plaintiff's mental functioning improved once he was stabilized. (R. 19). In addition to the improvement from 35 to 40 in 2011,[3] Plaintiff neglects to mention that Plaintiff's GAF score improved from 20-25 upon admission to 55 upon discharge in 2009. (R. 378-380). Plaintiff also received a GAF score of 69 from Dr. Dimalta in April 2011, indicating only mild limitation. (R. 565). For these reasons, the ALJ properly refused to give significant weight to the GAF scores at issue.

In short, I find the ALJ did not err in weighing the medical opinions and other evidence of record. Substantial evidence supports the ALJ's conclusion that, although limited, Plaintiff was capable of performing some substantial gainful activity. Accordingly, I find no error requiring remand in this case.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

---

[3] The substance of the underlying hospital records also reflects Plaintiff's improvement stating that, on discharge, Plaintiff was pleasant and cooperative; appeared very intelligent and articulate; denied suicidal or homicidal ideation; had no auditory or visual hallucinations; had stable mood and expressive affect; had logical and coherent thought processes; and fair judgment and insight. (R. 607).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BENJAMIN A. VARGA,
)
)
    Plaintiff,
)
)
  vs.
)
  Civil Action No. 2:14-25
)
CAROLYN COLVIN, Acting Commissioner of Social Security,
)
)
)
)
    Defendant.
)
)

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 26th day of November, 2014, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that it is ordered that Defendant's Motion for Summary Judgment (Docket No. 9) is GRANTED, and Plaintiff's Motion for Summary Judgment (Docket No. 7) is DENIED.

                                                    BY THE COURT:

                                                    /s/ Donetta W. Ambrose
                                                    Donetta W. Ambrose
                                                    U.S. Senior District Judge